1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7

8   REBECCA JANE G.                                   NO.  C18-5034-RAJ-JPD

9                              Plaintiff,

10        v.                                          REPORT AND
                                                      RECOMMENDATION
11  COMMISSIONER OF SOCIAL
    SECURITY,
12
                               Defendant.
13

14        Plaintiff appeals the final decision of the Commissioner of the Social Security

15  Administration ("Commissioner") which denied her applications for Disability Insurance

16  Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

17  Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18  administrative law judge ("ALJ").  For the reasons set forth below, the Court RECOMMENDS

19  that the Commissioner's decision be AFFIRMED.

20                    I.        FACTS AND PROCEDURAL HISTORY

21        At the time of the administrative hearing, plaintiff was a forty-three year old woman

22  with a high school education.  Administrative Record ("AR") at 36.  Her past work experience

23  includes employment as a childcare provider at the YMCA, as well as some office assistant

24

ORDER - 1

work and security system installation helper work.  AR at 36-37, 51.  Plaintiff was last gainfully employed in 2011.  AR at 37.

On May 16, 2014, plaintiff filed a claim for SSI payments and DIB, alleging an onset date of May 11, 2011.  AR at 182, 192.[1]  Plaintiff asserts that she is disabled due to methamphetamine dependence in remission, bipolar disorder, and anxiety disorder.  AR at 18, 39.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 100, 108, 115, 120.  Plaintiff requested a hearing, which took place on December 29, 2016.  AR at 32-55.  On February 15, 2017, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 12-25.  Plaintiff's request for review was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On January 23, 2018, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 4.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[1] Plaintiff's date last insured is December 31, 2013.  AR at 34.

ORDER - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such

severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

ORDER - 4

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

true, then the burden shifts to the Commissioner at step five to show that the claimant can

perform other work that exists in significant numbers in the national economy, taking into

consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

claimant is unable to perform other work, then the claimant is found disabled and benefits may

be awarded.

V.    DECISION BELOW

On February 15, 2017, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since May 11, 2011, the alleged onset date.

3.    The claimant has the following severe impairments: methamphetamine dependence in remission; bipolar disorder; and anxiety disorder.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:  She can perform simple, entry level work involving no transactional work with the public, only occasional, non-transactional interaction is permissible, only occasional interaction with coworkers and no team activities.

6.    The claimant is unable to perform any past relevant work.

ORDER - 5

7.   The claimant was born on XXXXX, June 22, 1973 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[3]

8.   The claimant has at least a high school education and is able to communicate in English.

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from May 22, 2011, through the date of this decision.

AR at 17-24.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.   Did the ALJ err in evaluating the opinion of an examining physician?

2.   Did the ALJ err in evaluating plaintiff's testimony?

Dkt. 15 at 1; Dkt. 17 at 1.

## VII.   DISCUSSION

A.   <u>The ALJ Did Not Err in Evaluating the Opinion of an Examining Physician</u>

*1.   Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 6

the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2.    Dr. Peter Weiss

Dr. Peter Weiss conducted a consultative examination for the Department of Social and Health Services (DSHS) in March 2014.  AR at 271–75.  Dr. Weiss's examination involved a clinical interview and mental status examination.  AR at 271–72, 274–75.  Plaintiff's speech was circumstantial at times, and she had difficulties with concentration in performing serial sevens, although she could perform serial threes without error.  AR at 275.  Dr. Weiss also noted "[s]ignificant" psychomotor retardation.  AR at 274–75.  Plaintiff's mental status examination was otherwise normal.  Dr. Weiss concluded that plaintiff had "severe" difficulty performing activities within a schedule, maintaining regular attendance, and being punctual within ordinary tolerances without special supervision.  AR at 273.  Dr. Weiss also indicated "marked" difficulty communicating and performing effectively in a work setting, and completing a normal work day and work week without interruptions from psychologically based symptoms. AR at 274.  Dr. Weiss indicated that these limitations would persist for 12 months, and were not the result of alcohol or drug use within the past 60 days.  AR at 274.

The ALJ gave Dr. Weiss's opinion "little weight" for several reasons.  AR at 21-22. First, the ALJ noted that Dr. Weiss "appear[ed] to base his opinions on the claimant's subjective complaints rather than objective medical evidence."  AR at 22.  Although plaintiff had difficulty performing serial sevens and at times had circumstantial speech, she had sufficient concentration to perform serial threes and had an otherwise unremarkable mental status examination.  AR at 274-75.  As discussed below, the ALJ did not err by rejecting plaintiff's testimony regarding the severity of her symptoms, and could reasonably conclude that Dr. Weiss's opinion was mostly based on plaintiff's less than fully credible statements. A

physician's opinion may be disregarded when it is premised on the properly rejected subjective

complaints of a plaintiff. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Second, the ALJ indicated that Dr. Weiss "did not take into account [plaintiff]'s

abilities if she followed up with consistent mental health counseling, and took medication for

her mental symptoms as prescribed." AR at 22.  This was a specific and legitimate reason for

the ALJ to discount Dr. Weiss' opinion.  The ALJ could reasonably conclude that plaintiff's

symptoms would most likely improve if she complied with her treatment recommendations,

such as mental health counseling and medications.  Plaintiff also concedes that she did not

regularly engage with treatment during the relevant period.  Dr. Weiss' opinion does not take

this into account, apart from noting plaintiff's self-report that "she is not currently taking any

psychotropic medication" as in the past "I took every antidepressant out there and they don't

work." AR at 271.

Third, the ALJ indicated that the severity of Dr. Weiss's opinions was inconsistent with

plaintiff's work activities and "wide variety of daily activities" during the period at issue.  AR

at 22.  The ALJ erred by relying on plaintiff's prior work to reject Dr. Weiss's opinion, as this

work was performed prior to her alleged onset date.  AR at 20, 272.  Specifically, plaintiff

reported to Dr. Weiss that she worked for her husband doing security alarm installation work

until 2009, and at the YMCA as a childcare provider thereafter until May 2011.  AR at 272.

However, it is undisputed that since her alleged onset date, she has been able cook meals, do

laundry and household chores, and raise her pre-school age son as a single parent, which

involve functioning the ALJ could find inconsistent with Dr. Weiss's opinion.  AR at 20.  The

ALJ adopted in part, for example, the other source opinion of plaintiff's friend who reported

that plaintiff had no difficulties performing general housekeeping, personal hygiene, using

public transportation, shopping in stores, paying bills, caring for her son, and regularly

attending church and recovery meetings.  AR at 23.  The ALJ could reasonably conclude that plaintiff's activities, which both pre- and post-dated her cessation of daily methamphetamine use, reflect a greater degree of functioning than found by Dr. Weiss.  *See also Morgan v. Comm'r of the Soc. Sec. Admin.,* 169 F.3d 595, 601–02 (9th Cir. 1999) (holding that an ALJ may discount a physician's opinion to the extent it conflicts with evidence of the claimant's daily activities).

Fourth, the ALJ opined that Dr. Weiss's evaluation in 2014 was issued "shortly after [plaintiff] stopped using methamphetamines, and residuals from that use could have affected her presentation."  AR at 22.  The ALJ could have reasonably concluded that the few abnormal symptoms on mental status examination exhibited by the plaintiff, including her "significant psychomotor retardation" and sometimes "circumstantial speech," were related to her recent cessation of daily methamphetamine use.  At the time of Dr. Weiss's March 25, 2014 evaluation, plaintiff was living in a shelter, reported one year of sobriety from methamphetamine, and was actively working on her recovery.  AR at 272.  As noted above, she had not yet regained custody of her son, who was still in foster care.  However, plaintiff concedes that her own inconsistent statements in the record suggest a significantly later date for her last use of methamphetamine than she reported to Dr. Weiss.  *See* Dkt. 5 at 12-13.  Records contemporaneous with Dr. Weiss's exam indicated a sober date of March 2013, a year prior to the exam.  AR at 272, 466.  Later records suggest a clean and sober date around January 2014.  AR at 287 (19 months sober as of August 2015); AR at 39 (Plaintiff's hearing testimony that she would be three years clean and sober on January 3, 2017).  Thus, if plaintiff's later reported date of sobriety is accurate, she was still using methamphetamines within two months of Dr. Weiss's March 25, 2014 examination.  AR at 274. The ALJ did not err by concluding that such recent and daily drug use likely contributed to the abnormal symptoms, such as psychomotor retardation, Dr. Weiss observed on mental status examination.

Finally, the ALJ stated that the record as a whole did not support the severity of Dr. Weiss's opinions. AR at 22. Although this assertion, without more, is too vague to allow the Court to meaningfully review the ALJ's reasoning, the ALJ properly provided several other legally valid reasons for declining to give Dr. Weiss' check-box evaluation much weight. An opinion that is conclusory and inconsistent with the rest of the evidence is properly rejected. *Meanel v. Apfel*, 172 F.3d 1111, 1113-1114 (9th Cir. 1999); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (finding that an ALJ may reject a physician's opinion, which is "brief and conclusory in form with little in the way of clinical findings to support [its] conclusion"); *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1995). The ALJ did not err by giving Dr. Weiss's opinion little weight, based on the lack of evidentiary support and inconsistency with the record as a whole, among other valid reasons. AR at 21.[4]

B.    The ALJ Did Not Err in Evaluating Plaintiff's Testimony

*1.    Standard for Evaluating the Plaintiff's Testimony*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.

---

[4] As the ALJ explained in his decision, plaintiff failed to appear for the other psychological consultative examinations that were scheduled for her. AR at 21. The ALJ gave some weight to the opinions of State agency psychological consultants Carla van Dam, Ph.D. and Eugene Kester, M.D., who opined plaintiff was capable of performing simple, routine, tasks, maintaining concentration, persistence and pace for two hours at a time, would do best in a work environment where she would have limited public contact, and could work with coworkers and supervisors, and she needed slow paced changes in the workplace. AR at 61-63, 92-95. The ALJ restricted plaintiff to only occasional interaction with coworkers and no team activities to account for their opinions, but did not adopt their opinion that plaintiff needed slow paced changes in the workplace because they did not have an opportunity to review recently submitted treatment records. AR at 21.

ORDER - 11

20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces

medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

testimony as to the severity of symptoms solely because they are unsupported by objective

medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v.*

*Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the

claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the

claimant's testimony.[5]  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing

*Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).  *See also Lingenfelter v. Astrue*, 504

F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically

identify what testimony is not credible and what evidence undermines the claimant's

complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at

722.  The ALJ may consider "ordinary techniques of credibility evaluation," including a

claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and

conduct, daily activities, work record, and testimony from physicians and third parties

concerning the nature, severity, and effect of the alleged symptoms.  *Thomas*, 278 F.3d at 958-

59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

---

[5] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded
SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that
"subjective symptom evaluation is not an examination of an individual's character[,]" and
indicated it would more "more closely follow [its] regulatory language regarding symptom
evaluation."  SSR 16-3p.  This change is effective March 28, 2016, and therefore applies to the
February 15, 2017 ALJ decision in this case.  The Court, however, continues to cite to relevant
case law utilizing the term credibility.

2.      *The ALJ Provided Several Clear and Convincing Reasons for*
*Discounting Plaintiff's Testimony*

The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR at 21. The ALJ summarized plaintiff's allegations, and then identified several reasons for giving her testimony less weight. AR at 20-21.

First, the ALJ noted that plaintiff "reports working and performing a wide variety of activities" such as working at the YMCA, helping her husband do security alarm work, cooking meals, washing laundry, and raising her son. AR at 20. As discussed above, as plaintiff's past work activities, including alarm installation work and childcare services at the YMCA, both pre-dated her alleged disability onset date and are not valid reasons for rejecting her testimony. However, the ALJ could reasonably find that plaintiff's other reported activities, including cooking, washing laundry, and caring for her young son as a single parent, were inconsistent with her allegations of total disability. As noted above, the ALJ adopted the testimony of plaintiff's friend, Linda Edgley, who described plaintiff's ability to perform general housekeeping and self-care, use public transportation, shop in stores, manage her money, care for her son as a single mother, and regularly attend church and recovery meetings. AR at 23. Thus, the plaintiff did not err by finding that plaintiff's daily activities were inconsistent with her testimony about her mental limitations.

Second, the ALJ stated that the record did not support the severity of plaintiff's alleged limitations, and that there were few objective findings indicative of significant functional restrictions. AR at 21. Specifically, the ALJ noted that "treatment notes contain only intermittent complaints of mental symptoms; there are few objective findings indicative of significant functional restrictions. Mental health treatment notes show she has only sporadically followed up

with mental health counseling." AR at 21.  Plaintiff concedes that "[i]t is true that Plaintiff has not always engaged consistently with services, but it does not follow that Plaintiff's anxiety is not genuine." Dkt. 15 at 8.  To determine whether the claimant's testimony regarding the severity of her symptoms is credible, however, the ALJ may properly consider unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ reasonably found that the record did not contain the kind of objective findings or mental health treatment notes that would be expected, given plaintiff's allegations regarding her mental limitations.  Similarly, the ALJ gave plaintiff's testimony less weight because plaintiff failed to appear for a psychological consultative examination on two occasions. AR at 21.  The lack of support in the record, through objective findings or treatment records, is a clear and convincing reason for the ALJ to give plaintiff's testimony less weight.  As a result, the plaintiff has not shown that the ALJ's rejection of her testimony constitutes harmful error.

## VIII.    CONCLUSION

The role of this Court is limited.  As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039.  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954.  While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.  For the foregoing reasons, the Court recommends that the Commissioner's decision be AFFIRMED.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **January 2, 2019**.  Failure to file

objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 4, 2019**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 19th day of December, 2018.

JAMES P. DONOHUE
United States Magistrate Judge

ORDER - 15